IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

**HUNTINGTON DIVISION**

LORI GOODMAN,

        Plaintiff,

v.                               CIVIL ACTION NO.  3:16-5953

UNITED STATES OF AMERICA,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

There are presently eight pending motions in this case. As set forth herein, the motions are disposed of as follows: (1) Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction/Motion for Total or Partial Summary Judgment, ECF No. 36, is **GRANTED in part** and **DENIED in part**; (2) Defendant's Motion to Dismiss for Failure to Serve a Screening Certificate of Merit as Required by West Virginia Code, ECF No. 44, is **DENIED**; (3) Defendant's Motion to Exclude Evidence of Damages Not Already Disclosed, ECF No. 53, and Defendant's Motion to Preclude Plaintiff From Making Golden Rule Arguments, ECF No. 49, are **GRANTED as uncontested**; (4) Defendant's Motion to Exclude Opinions, Evidence, and/or Testimony Regarding Alleged Deviations From the Standard of Care, ECF No. 51, is **GRANTED in part** and **DENIED in part**; (5) Defendant's Motion to Exclude Evidence of Amounts Paid for Past Medical Expenses in Excess of Amounts Actually Paid, ECF No. 55, is **GRANTED**; and (5) Defendant's Motion to Preclude Plaintiff From Introducing or Using Literature, ECF No. 57, and Plaintiff's Cross-Motion to Preclude Defendant from Introducing or Using Literature, ECF No. 68, are **DENIED as premature**.

# I.    Background

Plaintiff filed the present Complaint on July 1, 2016. ECF No. 1. In her Complaint, Plaintiff alleges that during the time period relevant to her injury she was a patient of Dr. Andrea Kellar, a physician whose primary work location was at Valley Health Systems, Inc. ("Valley Health"). *Id.* Valley Health is "a designated federally supported health center under the Public Health Services Act," ECF No. 37, such that the Federal Tort Claims Act ("FTCA") provides for Government compensation in the case of "personal injury or death caused by the negligent or wrongful act or omission of any employee [of Valley Health] while acting within the scope of [her] office or employment . . ." 28 U.S.C. § 2672. Plaintiff alleges that she was the victim of such acts and omissions.

Plaintiff's claims, brought pursuant to the FTCA, allege that Dr. Kellar performed a hysterectomy on Plaintiff at Cabell Huntington Hospital on May 6, 2014. ECF No. 1. Plaintiff asserts that, during that operation, Dr. Kellar "inserted a suture through [Plaintiff's] bladder wall" and failed to discover the suture placement before closing Plaintiff's incision. *Id.* Plaintiff claims that, following the hysterectomy, she suffered from painful and abnormal urination and a low-grade fever, but Dr. Kellar failed to diagnose the misplaced suture. *Id.*

On September 23, 2014, Plaintiff consulted with a urologist, Dr. James Woolums. ECF No. 1. On October 7, 2014, Dr. Woolums "performed a cystoscopy on Plaintiff and discovered a stitch/hole in Plaintiff's bladder and an area on Plaintiff's posterior bladder wall, consistent with a fistula." *Id.* Dr. Woolums then performed a second surgery on Plaintiff on December 8, 2014, to repair the fistula and the injuries to Plaintiff's bladder. *Id.*

Plaintiff alleges that Dr. Kellar was negligent in her care and treatment of Plaintiff in four ways: (1) misplacement of the suture; (2) failure to timely recognize the misplaced suture; (3)

failure to timely remove the misplaced suture; and (4) other negligent acts. ECF No. 1. Plaintiff further alleges that, as a result of Dr. Kellar's alleged negligence, Plaintiff suffered personal injuries and damages.

After Plaintiff filed her Complaint and Defendant timely answered on December 12, 2016, the parties underwent their first period of discovery. During that period, Dr. Kellar provided deposition testimony in which she informed the parties that she had been assisted during Plaintiff's surgery by a resident physician employed by the Marshall University School of Medicine, Dr. Jessica Granger. ECF No. 37. During her deposition, Dr. Kellar testified that it was Dr. Granger, not Dr. Kellar, who placed the suture through Plaintiff's bladder. ECF No. 36-4. After Dr. Kellar's testimony, the parties took the deposition of Plaintiff's expert, Dr. Robert Dein. At that time, Dr. Dein testified that, based on Dr. Kellar's testimony, Dr. Granger likely placed the errant suture. ECF No. 36-5 ("That is the best information I have based on what Dr. Kellar stated . . .").

On December 22, 2017, Defendant filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction and/or Motion for Total or Partial Summary Judgment. ECF No. 36. In that Motion, Defendant disclosed an Affiliation Agreement between Marshall University School of Medicine and Valley Health Systems, Inc. ECF No. 36-1. According to Defendant, the Affiliation Agreement is a key document in determining the relationships between the parties – specifically the relationship between Dr. Granger and Valley Health. ECF No. 36. The Agreement, however, was not produced in discovery despite Plaintiff's requests for any such information or material. ECF No. 66.

As a result of the nondisclosure of the Affiliation Agreement during the discovery period, Plaintiff moved the Court to allow for additional discovery regarding the relationships between the involved parties and Dr. Kellar's potential liability for the acts of Dr. Granger. ECF No. 65.

Finding good cause, the Court granted Plaintiff an additional discovery period for the purpose of clarifying these relationships on February 28, 2018. ECF No. 81. During this period of additional discovery, the parties deposed Dr. Paulette Wehner, Vice Dean for Graduate Medical Education at Marshall University's medical school. ECF No. 92, at 2. Dr. Wehner testified at that deposition that the Affiliation Agreement was inapplicable to Marshall residents assisting physicians at Cabell Hunting Hospital. ECF No. 92-1, at 4.

The additional discovery period expired in June 2018. *Id*. At that time, both parties submitted supplemental briefing to the Court regarding the issue of the relevant relationships and liability for the involved parties and actors. ECF Nos. 92, 93. In their briefing, the parties informed the Court that they discovered it is

In addition to Defendant's Motion to Dismiss and/or Motion for Total or Partial Summary Judgment, the parties have several other pretrial motions pending in this case. The Court disposes of all pending motions as set forth herein.

## II. Discussion

### a. Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction/ Motion for Total or Partial Summary Judgment

Defendant argues that Plaintiff's case should be dismissed or that the Court should grant summary judgment in favor of Defendant for several reasons. The Court considers each of Defendant's arguments below and, for reasons specified herein, **GRANTS in part** and **DENIES in part**.

### i. Dr. Kellar's Alleged Negligence

First, Defendant argues that it is entitled to summary judgment because "Dr. Kellar did not place a suture into the plaintiff's bladder during the hysterectomy . . ." ECF No. 37, at 4.

A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment may not be granted where the evidence is "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment should be granted, however, when, drawing all inferences in a light most favorable to the non-movant, "the record as a whole could not lead a rational trier of fact to find for the non-movant." *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991).

Defendant asserts that the evidence as to who placed the stitch causing injury is "undisputed" and that, as a result, Defendant is entitled to summary judgment. Plaintiff points out in her Response that, in her Complaint, the placement of the stitch was only one of several injuries she allegedly suffered at the hands of Dr. Kellar. ECF No. 39, at 8. Plaintiff's Complaint alleges the following in support of her negligence claim: (1) Dr. Kellar negligently placed a suture in Plaintiff's bladder; (2) Dr. Kellar failed to timely recognize that a suture had been placed through Plaintiff's bladder during the operation; (3) Dr. Kellar failed to timely remove the misplaced suture; and (4) "other negligent acts." ECF No. 1.

Defendant's argument addresses only the first of these claims and does not address the alleged negligence underlying Plaintiff's claims that Dr. Kellar failed to timely recognize the suture, failed to timely remove the suture, and committed other negligent acts. Accordingly, the Court finds that there remains a genuine dispute of material fact as to whether Dr. Kellar's overall treatment of Plaintiff fell below the applicable standard of care. On this point, Defendant's Motion is **DENIED**.

### ii. Sovereign Immunity as to Actions of Dr. Granger

While Plaintiff's claims as to Dr. Kellar's negligence remain, Defendant argues that it cannot be held vicariously liable for any negligence on the part of Dr. Granger. ECF No. 37, at 5. Defendant admits that Valley Health is a "federally supported clinic covered by [relevant federal laws and the FTCA]," but argues that because Dr. Granger was not an employee of Valley Health at the time of the alleged negligence, Defendant cannot be held liable for any negligence on Dr. Granger's part. *Id.*

"The [FTCA] is a limited waiver of sovereign immunity, making the Federal Government liable to the same extent as a private party for certain torts of federal employees acting within the scope of their employment. *United States v. Orleans*, 96 S.Ct. 1971, 1975 (1976). The FTCA's definitions section provides that its term "employee of the government" includes "officers or employees of any federal agency . . . and persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States, whether with or without compensation . . ." 28 U.S.C. § 2671.

The Federally Supported Health Centers Assistance Act of 1995 ("FSHCAA") further provides that an injured person may bring her claims against the United States, pursuant to the FTCA, "for damage for personal injury . . . resulting from the performance of medical [or] surgical . . . . functions . . . by any commissioned officer or employee of the Public Health Service while acting within the scope of [her] office or employment . . ." 42 U.S.C. § 233(a). The FSHCAA defines "employee of the Public Health service" as "a public or non-profit private entity receiving Federal funds under [42 U.S.C. § 254b]," and "any officer, governing board member, or employee of such an entity, and any contractor of such an entity who is a physician or other licensed or certified health care practitioner . . ." 42 U.S.C. § 233(g)(1)(A).

"The FTCA, as a waiver of sovereign immunity, is strictly construed, and all ambiguities are resolved in favor of the sovereign." *Robb v. United States*, 80 F.3d 884, 887 (4th Cir. 1996). The plaintiff bears the burden to prove a waiver of sovereign immunity. *Welch v. United States*, 409 F.3d 646 (4th Cir. 2005). The Court finds that Plaintiff has not met that burden here and that, strictly construing the question in favor of Defendant, the United States has not waived its sovereign immunity as to claims of vicarious liability arising from the negligence of Dr. Jessica Granger.

The proper test to determine whether an actor is a government employee for FTCA purposes is a control test. *Orleans*, 425 U.S. 807 at 814; *Logue v. United States*, 412 U.S. 521, 528 (1973). If the government has the authority to "control the detailed physical performance of [an individual]," then that individual is an employee of the government. *Logue*, 412 U.S. at 528. The key question is not whether the actor receives federal money or whether the actor must comply with federal standards and regulations, but "whether [her] day-to-day operations are supervised by the Federal Government." *Orleans*, 425 U.S. at 815.

Plaintiff now argues that because the Affiliation Agreement between Marshall University and Valley Health did not dictate the terms of Dr. Granger's participation in Plaintiff's surgery, Defendant is not shielded from liability pursuant to the terms of that agreement. ECF No. 92, at 2. Defendant, on the other hand, argues that its immunity was never rooted in the terms of the Affiliation Agreement but rather stems from the limitations of the FTCA's waiver of sovereign immunity. ECF No. 93, at 2.

According to Defendant, Dr. Granger has never been an employee of Valley Health nor has she ever been paid compensation or benefits by Valley Health. ECF No. 37, at 6. She has additionally never been an officer, governing board member, or contractor of Valley Health. *Id.*,

at 7. Defendant asserts that Dr. Granger was, at all relevant times, an employee of Marshall University. ECF No. 93, at 2. During the relevant time period, Defendant argues, "Marshall Health paid Dr. Granger a stipend, controlled her schedule, provided professional liability insurance, and imposed other duties and obligations upon her. Dr. Granger was listed on the payroll and employment records of Marshall Health as an employee, received fringe benefits as an employee of Marshall Health, and was covered as an employee under Marshall Health's workers compensation coverage." *Id*.

In support of its assertions, Defendant submits to the Court a contract executed between Marshall University and Dr. Granger. ECF No. 93-1. This contract, entitled Residency/Fellowship Notice of Appointment, set forth the terms of Dr. Granger's employment including the time period of employment, her compensation rate, and her duties and obligations as a resident. ECF No. 93-1.

In examining the relevant evidence regarding the relationship between Dr. Granger and Valley Health, the Court finds that there is no evidence that Valley Health had any actual control over the day-to-day conduct of Dr. Granger during her time as a resident at Valley Health. The Court therefore agrees with Defendant that Dr. Granger was not an employee of Valley Health at the time of Plaintiff's operation. She therefore does not fall within the FSHCAA's definition of employee.

The Court finds that Dr. Granger is also not a contractor such that she falls within the FTCA's coverage pursuant to the FSHCAA. Where an individual contracts with a non-eligible entity, which entity then contracts with an eligible entity, that individual cannot qualify as a contractor within the meaning of the statute and is thereby precluded from being considered a covered employee under the relevant laws. *Dedrick v. Youngblood*, 200 F.3d 744, 747 (11th Cir.

2000). Dr. Granger presumably contracted with Marshall University, and Marshall University then contracted with Valley Health, an eligible entity, for the provision of medical residents. Even if the terms of the Affiliation Agreement executed between Marshall University and Valley Health did not dictate the conduct of the parties during the date of Plaintiff's surgery at Cabell Huntington Hospital, there is no evidence of any contract executed directly between Dr. Granger and Valley Health in any capacity. Accordingly, Dr. Granger is not an "individual" who contracted with Valley Health such that the United States has waived sovereign immunity as to any negligence on her part. Dr. Granger is therefore precluded from being a covered employee under this theory as well.

In conclusion, Dr. Jessica Granger is not an employee covered under the provisions of the FTCA and Defendant is protected from claims of vicarious liability for the negligence of Dr. Granger by the principle of sovereign immunity. Defendant's Motion to Dismiss as it relates to claims of vicarious liability against the United States for the negligence of Dr. Jessica Granger is therefore **GRANTED**. Plaintiff will be barred from proceeding with any claims of vicarious liability against the United States arising from the negligence of Dr. Granger.

### iii. Plaintiff's Exhaustion of Federal Administrative Remedies

Defendant next argues that Plaintiff's case should be dismissed for failure to exhaust administrative remedies. Pursuant to federal law, before filing suit against the United States under the FTCA, a plaintiff must first present her claims "to the appropriate Federal agency . . ." 28 U.S.C. § 2675(a). The presentment requirement is met if a plaintiff's notice to the federal agency in question "(1) is sufficient to enable the agency to investigate and (2) places a 'sum certain' value on her claim." *Ahmed v. United States*, 30 F.3d 514, 517 (4th Cir. 1994) (quoting *Adkins v. United States*, 896 F.2d 1324, 1326 (11th Cir. 1990)).

Defendant argues that Plaintiff's notice failed to meet these requirements because Plaintiff's notice failed to mention Dr. Granger. ECF No. 37, at 9. Defendant argues that, because Dr. Granger was not named in Plaintiff's notice, the notice was insufficient to enable Defendant to investigate Plaintiff's claims. *Id.*

The statutory purposes of the FTCA's presentment requirements are met when "a claim brings to the Government's attention facts sufficient to enable it thoroughly to investigate its potential liability and to conduct settlement negotiations with the claimant." *Rise v. United States*, 630 F.2d 1068, 1071 (5th Cir. 1980). A claimant need not state legal theories in her notice to the Government; she need only identify the facts underlying her claims such that the Government may then conduct its own investigation. *See Johnson by Johnson v. United States*, 788 F.2d 845, 849 (2d Cir. 1986). *See also Rise*, 630 F.2d at 1071 ("[I]f the Government's investigation of [a plaintiff's] claim should have revealed theories of liability other than those specifically enumerated therein, those theories can properly be considered part of the claim.")

In *Johnson*, the Second Circuit found that where a plaintiff's administrative claim had stated the cause of her injury, the name of the employee who had allegedly injured her, and the date and location the injury had occurred, "the claim notified the agency of sufficient factual circumstances to enable it to investigate the matter." *Id.* The court went on to find that, even though the administrative claim had not included facts evidencing the plaintiff's later claims of negligent supervision, "a reasonably thorough investigation of the incident [as alleged in the plaintiff's administrative claim] should have uncovered any pertinent information in the government's possession relating to the agency's [supervision of the alleged wrongdoer]." *Id.* Accordingly, the court in that case found that the plaintiff had successfully presented her case before filing suit such that her claims could properly proceed in court. *Id.*

So long as the Government is sufficiently put on notice as to the government misconduct a claimant alleges, the claimant has met her burden under the FTCA's presentment requirements. *Broudy v. United States*, 722 F.2d 566, 568–69 (9th Cir. 1983). In this case, Plaintiff included in her administrative claim the date, place, and time of the surgery during which she was injured. ECF No. 36-3. She included the name and contact information of the physician responsible for her care during that surgery. *Id*. She gave a detailed description of her injuries and the damages she suffered, and she named a sum certain amount for recovery. *Id*. The Court therefore finds that she met her burden under the presentment requirements of the FTCA. *See Rooney v. United States*, 634 F.2d 1238, 1243 (9th Cir. 1980) (finding the requirements met where the plaintiff included in his notice the date and place of his injuries and subsequent medical care, all the injuries that he sustained, and an amount of the damages he claimed to have suffered). Accordingly, Defendant's Motion to Dismiss on these grounds is **DENIED**.

### iv. Discretionary Exemption

Defendant finally argues that, to whatever extent Plaintiff pleads that Dr. Kellar negligently supervised Dr. Granger during the surgery, those claims are barred by the discretionary function exemption included in the FTCA. ECF No. 37, at 12. The FTCA includes a list of exceptions – claims that are barred under the Act. *See* 28 U.S.C. § 2680. This section of the law provides that any claim "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty [will be barred under the FTCA] . . ." 28 U.S.C. § 2680(a). Defendant argues that Dr. Kellar's supervision of Dr. Granger was discretionary and, as such, falls within this exception. ECF No. 37, at 12.

"The discretionary function exception . . . marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain

governmental activities from exposure to suit by private individuals." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense*, 104 S.Ct. 2755, 2762 (1984). *See also Williams v. United States*, 50 F.3d 299, 308 (4th Cir. 1995) ("The discretionary function exception to the FTCA insulates the United States from liability for its agents and employees' performance of duties involving discretionary decisions."). Whether an act falls under the exception is dependent upon the consideration of two factors: (1) whether the act is "discretionary in nature" and (2) whether it is "based on considerations of public policy." *Hodge v. United States*, 443 F.Supp.2d 795, 799 (E.D.Va. 2006). "[A] reviewing court . . . is to look to the nature of the challenged decision in an objective, or general sense, and ask whether that decision is one which we would expect inherently to be grounded in considerations of policy." *Baum v. United States*, 986 F.2d 716, 720–21 (4th Cir. 1993).

The Court notes that it is important to define the precise government action in question before conducting its analysis of the applicability of the discretionary function exception. In examining similar cases, the Court finds that the proper frame for the question at issue in this case is whether the United States' decision to contract with Marshall University for the provision of medical residents – including Dr. Granger – falls within the discretionary function exception. *See Blankenship v. United States*, 111 F.Supp.3d 745, 749 (W.D.Va. 2015). If Defendant's decision to contract with Marshall University was discretionary, then the United States cannot be held liable for negligent supervision of the residents provided pursuant to that contract. *See Williams*, 50 F.3d at 310.

Considering the first factor, the Court notes that the discretionary exception "does not apply if a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." *Williams*, 50 F.3d at 309 (internal citation and quotation omitted). Where, however, the

governmental actor or agency acts without such a prescription for its conduct, that action is generally discretionary in nature. *Id. See also Hodge*, 443 F.Supp.2d at 799 (finding that, because no statute or regulation required or forbade the United States from the conduct in question, "prong one [was] easily satisfied.").

Bearing this foundation in mind, the Court finds that the first factor weighs in favor of application of the discretionary exception in this case. There was no law or regulation that required Valley Health to incorporate medical residents into its practice, nor was there a prescription for how to include medical residents in its practice when, acting within its discretion, Valley Health decided to do so. Accordingly, Valley Health's decision to contract with Marshall University was discretionary in nature.

Turning to the second factor, whether Valley Health's decision to contract with Marshall University for the provision of medical residents was based on considerations of public policy, the Court finds that it was. "The Fourth Circuit has previously held that the decision to contract for services is policy-based and therefore amounts to a discretionary function." *Hodge*, 443 F.Supp.2d at 799. While the decision to contract was inherently policy-based, the contract itself provides even more insight regarding the extent to which Valley Health's decision to include medical residents in its practice was rooted in policy considerations. *See* ECF No. 36-1.

In the preamble of the Affiliation Agreement between Valley Health and Marshall University, Valley Health asserted that it "desire[d] to participate in the education of Marshall's . . . residents . . ." to further the interests of the community, "to enhance educational programs for health care professionals," and to "improve patient care in keeping with the highest standards of medical practice . . ." ECF No. 36-1. These statements are all evidence that Valley Health was exercising its discretion to further public health policy goals in its decision to contract with

-13-

Marshall University. Because both considerations weigh heavily in favor of applying the exception, the Court finds that the discretionary function exception applies and that the FTCA therefore does not cover Valley Health's decision to contract with Marshall University.

As previously discussed, because Valley Health's decision to contract with Marshall University for the provision of medical residents was discretionary, the United States cannot be held liable for the negligent supervision of residents produced pursuant to that contract. Such supervision is "embraced by the overarching decision to [contract in the first place]." *Williams*, 50 F.3d at 310. *See also Blankenship v. United States*, 111 F.Supp.3d 745, 750 (W.D.Va. 2015) (finding that the plaintiff's negligent supervision claim, asserting that the United States had been negligent in its supervision of a doctor who had been negligent in his provision of medical care to the plaintiff, was barred because the United States' supervision of the government doctor was embraced by its overarching decision to contract for the doctor's services in the first place.) (internal citation and quotation omitted). Valley Health and Dr. Kellar's supervision of Dr. Granger therefore falls within the umbrella of the discretionary function exception and no claim of negligent supervision may proceed.

Accordingly, Defendant's Motion as it relates to this issue is **GRANTED**. To whatever extent Plaintiff pleads a claim of negligent supervision on the part of Dr. Kellar, that claim is dismissed.

### b.  Defendant's Motion to Dismiss for Failure to Serve a Screening Certificate of Merit as Required by West Virginia Code (ECF No. 44)

Next, Defendant argues that the Court should dismiss "all of [Plaintiff's] allegations and claims of negligence asserted in this civil action against [Defendant] based on the alleged negligence of Dr. Jessica Granger." ECF No. 44. Defendant argues that, because Plaintiff allegedly

failed to serve a screening certificate of merit asserting a claim of negligence against Dr. Granger prior to filing the present suit, her case should now be dismissed as it relates to any alleged negligence on Dr. Granger's part. *Id.* The Court notes as a preliminary matter that it has granted Defendant's motion to dismiss as to any claims of vicarious liability or negligent supervision arising from the conduct of Dr. Granger. To whatever extent Plaintiff's claims still arise from or relate to Dr. Granger's negligence, the Court analyzes the issue of West Virginia's presentment requirements below.

The West Virginia Medical Professional Liability Act ("MPLA") requires that, "[a]t least thirty days prior to the filing of a medical professional liability action against a health care provider, the claimant . . . serve by certified mail . . . a notice of claim on each health care provider the claimant will join in litigation." W.Va. Code § 55-7B-6(b) (2017). The law further provides that "[t]he notice of claim shall include a statement of the theory or theories of liability upon which a cause of action may be based . . ." *Id.* Additionally, "[a] separate screening certificate of merit must be provided for each health care provider against whom a claim is asserted." *Id.*

On January 14, 2016, Plaintiff properly served a screening certificate of merit on Valley Health – A Woman's Place. ECF No. 36-3. In that certificate, Plaintiff's expert Dr. Dein stated that, in his professional opinion, Dr. Kellar had breached the standard of care she owed to Plaintiff by: (a) "failure to appropriately [sic] recognize surgical planes" on May 6, 2014; (b) "failure to timely recognize that Dr. Kellar placed a . . . suture through [Plaintiff's] bladder on May 6, 2014"; (c) "failure to timely remove the misplaced bladder suture prior to formation of a fistula tract"; and (d) "other negligent acts." *Id.* The certificate of merit did not mention Dr. Granger. *See id.*

The Supreme Court of West Virginia has stated that "the purposes of requiring a pre-suit notice of claim and screening certificate of merit are (1) to prevent the making and filing of

frivolous medical malpractice claims and lawsuits; and (2) to promote the pre-suit resolution of non-frivolous medical malpractice claims." *Hinchman v. Gillette*, 618 S.E.2d 387, 394 (W.Va. 2005). Given these stated policy objectives, "a principal consideration before a court reviewing a claim of insufficiency in a notice or certificate should be whether a party challenging or defending the sufficiency of a notice and certificate has demonstrated a good faith and reasonable effort to further the statutory purposes." *Id*.

In order to meet the requirements of the MPLA, a plaintiff need not plead in a "hypertechnical way." *Harper v. United States*, 2011 WL 1299445, at *2 (S.D.W.Va. Mar. 30, 2011). She need only "put the Government on notice to [her] general theory of the case." *Id*. So long as a plaintiff provides enough information in her screening certificate of merit that the Government has the opportunity to investigate and discover the facts underlying the claims, her screening certificate of merit is sufficient. *See id.*

In this case, Plaintiff noted in her screening certificate of merit that she had been injured during an operation that took place at Cabell Huntington Hospital on May 6, 2014. ECF No. 36-3. The certificate included an expert's statement in which he detailed the nature of the operation and the injuries that resulted therefrom, based on his review of Plaintiff's medical records. *Id*. At the time Plaintiff served Defendant with the screening certificate of merit, she was unaware of Dr. Granger's involvement in her treatment. ECF No. 67. In fact, Plaintiff was not even made aware of Dr. Granger's involvement in her treatment until Dr. Kellar revealed this information during a deposition taken over a year after this suit was filed. *Id*.

Given these circumstances, the Court finds that not only did Plaintiff provide enough facts in her screening certificate of merit that Defendant was given sufficient opportunity to investigate Plaintiff's claims, but the information that was omitted from the certificate of merit was

information that was within the exclusive control of Defendant at the time Plaintiff served the certificate. Defendant cannot now argue that Plaintiff's certificate was defective because she did not include in it information that was exclusively within the Government's control that was not revealed to her until over a year after she filed suit.

In considering the policy objectives of the MPLA's service requirements, the Court finds that Plaintiff meets both. Plaintiff's claims are clearly not frivolous, as she has submitted to the Court ample evidence of her injuries throughout the litigation of this case. Additionally, Plaintiff provided Defendant with enough information in her certificate of merit to enable both parties to make informed attempts to resolve the suit before it came to this Court. Accordingly, Defendant's Motion to Dismiss for Failure to Serve a Screening Certificate of Merit as Required by West Virginia Code (ECF No. 44) is **DENIED**.

**c. Defendant's Motion to Preclude Plaintiff From Making Golden Rule Arguments (ECF No. 49) and Defendant's Motion to Exclude Evidence of Damages Not Already Disclosed (ECF No. 53)**

Defendant next asks the Court "to enter an order precluding the plaintiff and her counsel from asserting 'Golden Rule' arguments during the trial of this civil action . . ." ECF No. 49. In her Response, Plaintiff asserts that "[n]either Plaintiff nor her counsel will make a golden rule argument in violation of federal law." ECF No. 62.

Defendant also asks the Court "to enter an order excluding any evidence of damages not already disclosed by the plaintiff . . ." ECF No. 53. In her Response, Plaintiff states that "she does not intend to make any claim for damages, other than those disclosed during this civil action and summarized in Plaintiff's [p]ortion of the Integrated Pretrial Order . . ." ECF No. 71.

As Plaintiff does not contest Defendant's Motions, Defendant's Motions as specified in this subsection are **GRANTED as uncontested**.

### d. Defendant's Motion to Exclude Opinions, Evidence, and/or Testimony Regarding Alleged Deviations From the Standard of Care (ECF No. 51)

Defendant also asks the Court "to enter an order prohibiting, barring and excluding any opinions, evidence, and/or testimony that the defendant deviated from the standard of care and/or was negligent in providing any health care services to the plaintiff other than those deviations alleged to have occurred on May 6, 2014 . . ." ECF No. 51. In her response, Plaintiff states that she has "no objection" to the Motion. ECF No. 70.

In its Motion, Defendant submits that Plaintiff's expert "did not disclose any opinions that the defendant was negligent in providing health care services prior to **or after** May 6, 2014." ECF No. 51 (emphasis added). The Court finds that this is an erroneous statement. In his screening certificate of merit, Dr. Dein stated that the defendant "breached the standard of care **beginning on** May 6, 2014." ECF No. 36-3. In the same document, Dr. Dein identified several ways in which the standard of care had been breached. *Id*. One of these identified a "failure to timely remove the misplaced bladder suture prior to formation of a fistula tract." *Id*. As Dr. Dein later explained in his deposition, "a vesicovaginal fistula is something that is delayed . . ." ECF No. 51-1.

From the faces of these documents, the Court finds that while Defendant is correct that Dr. Dein did not disclose any opinions that Defendant was negligent prior to May 6, 2014, it also finds that Dr. Dein certainly made his opinion clear that there was a "failure to timely remove the misplaced bladder suture" during the period after the suture's placement on May 6, 2014. Accordingly, to the extent that Defendant seeks to limit opinions, evidence, and testimony regarding alleged deviations from the standard of care prior to May 6, 2014, Defendant's Motion

is **GRANTED**. However, to whatever extent Defendant seeks to limit the same for the period after May 6, 2014, Defendant's Motion is **DENIED**. Plaintiff's expert will be permitted to testify as to his opinions regarding alleged deviations from the standard of care in the time period following Plaintiff's surgical procedure as those opinions relate to the alleged deviation from the standard of care for failure to timely removed the allegedly misplaced bladder suture.

### e. Defendant's Motion to Exclude Evidence of Amounts Paid for Past Medical Expenses in Excess of Amounts Actually Paid (ECF No. 55)

In its next Motion in Limine, Defendant asks the Court "to enter an order excluding any evidence of amounts paid for past medical expenses in excess of amounts actually paid for or on behalf of the plaintiff . . .", pursuant to W.Va. Code § 55-7B-1. ECF No. 55. The relevant provision of the West Virginia MPLA states that "[a] verdict for past medical expenses is limited to: (1) [t]he total amount of past medical expenses paid by or on behalf of the plaintiff; and (2) [t]he total amount of past medical expenses incurred but not paid by or on behalf of the plaintiff for which the plaintiff or another person on behalf of the plaintiff is obligated to pay." W.Va. Code § 55-7B-9d (2015).

Plaintiff argues that Defendant's Motion should be denied because Defendant has failed to apply the relevant statutory provisions in the proper context. ECF No. 63. According to Plaintiff, when taken in statutory context, this language is only applicable to "post judgment situations." ECF No. 63. In support of her position, Plaintiff cites to W.Va. Code Section 55-7B-9a which states: "[A] defendant who has been found liable to the plaintiff for damages for medical care, rehabilitation services, lost earnings or other economic losses may present to the court, after the trier of fact has **rendered a verdict**, but before entry of judgment, evidence of payments the

plaintiff has received for the same injury from collateral sources." W.Va. Code § 55-7B-9a(a) (2015) (emphasis added).

The Court finds that the plain language of these statutes is clear. Section 55-7B-9a applies only "after the trier of fact has rendered a verdict." W.Va. Code § 55-7B-9a(a). Section 55-7B-9d applies to the verdict itself. Therefore, Section 55-7B-9a does not limit or usurp the authority of Section 55-7B-9d at the time of the verdict. Because Section 55-7B-9d's language limits the jury's verdict regarding past medical expenses, the statute's limits will be extended to the evidence this Court will allow to be presented at trial. Defendant's Motion is **GRANTED**, and Plaintiff will be prohibited from presenting or admitting into evidence any evidence of amounts paid for past medical expenses in excess of amounts actually paid for her or on her behalf at trial.

### f. Defendant's Motion to Preclude Plaintiff From Introducing or Using Literature (ECF No. 57) and Plaintiff's Cross-Motion to Preclude Defendant from Introducing or Using Literature (ECF No. 68)

Finally, Defendant asks the Court to preclude Plaintiff "from introducing into evidence and/or using articles, textbooks, treatises, or other literature for any purpose during the trial of this civil action . . ." ECF No. 57. In her response, Plaintiff asserts that she does not intend to introduce any articles, textbooks, treatises, or other literature as part of her case-in-chief. ECF No. 68. Plaintiff does, however, seek to maintain the right to introduce such evidence in the course of her cross-examinations of Defendant and Defendant's expert witness, Dr. Steven McCarus. *Id.*

Additionally, Plaintiff asks the Court to "preclude Defendant from introducing into evidence and/or using publications, articles, textbooks, treatises, and literature for any purpose at the trial of this civil action." ECF No. 68. In its Response, Defendant argues that it disclosed to Plaintiff several documents during the course of discovery that it should be permitted to use at

trial. ECF No. 73. Among these documents, Defendant notes a patient brochure, "certain drawings" it intends to use as demonstrative aids, and "a particular chart regarding hysterectomy complications." *Id.*

The Court finds that both of these motions are made prematurely. As such, the motions (ECF Nos. 57 and 68) are **DENIED as premature**. Both parties will maintain the right to object to any publications, articles, textbooks, treatises, or other literature either party seeks to introduce into evidence or to use as demonstratives if and when such evidence is introduced at trial.

### III.    Conclusion

As set forth above, the Court orders as follows: (1) Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction/Motion for Total or Partial Summary Judgment, ECF No. 36, is **GRANTED in part** and **DENIED in part**; (2) Defendant's Motion to Dismiss for Failure to Serve a Screening Certificate of Merit as Required by West Virginia Code, ECF No. 44, is **DENIED**; (3) Defendant's Motion to Exclude Evidence of Damages Not Already Disclosed, ECF No. 53, and Defendant's Motion to Preclude Plaintiff From Making Golden Rule Arguments, ECF No. 49, are **GRANTED as uncontested**; (4) Defendant's Motion to Exclude Opinions, Evidence, and/or Testimony Regarding Alleged Deviations From the Standard of Care, ECF No. 51, is **GRANTED in part** and **DENIED in part**; (5) Defendant's Motion to Exclude Evidence of Amounts Paid for Past Medical Expenses in Excess of Amounts Actually Paid, ECF No. 55, is **GRANTED**; and (5) Defendant's Motion to Preclude Plaintiff From Introducing or Using Literature, ECF No. 57, and Plaintiff's Cross-Motion to Preclude Defendant from Introducing or Using Literature, ECF No. 68, are **DENIED as premature**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER:    August 3, 2018

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE