# IN THE UNITED STATES DISTRICT COURT FOR
# THE SOUTHERN DISTRICT OF WEST VIRGINIA

## HUNTINGTON DIVISION

LORI GOODMAN,

        Plaintiff,

v.                                          CIVIL ACTION NO. 3:16-5953

UNITED STATES OF AMERICA,

        Defendant.

## MEMORANDUM OPINION AND ORDER

Following a bench trial on May 21 and 22, 2019, the Court found in favor of Plaintiff and awarded $398,017.57 in damages. ECF No. 133. A subsequent Order corrected the damages calculation and reduced the damages to $355,359.43. ECF No. 137. Now pending is Defendant's Motion to Vacate, Alter and/or Amend the Judgment Entered in this Civil Action and Enter Judgment in Favor of the United States, or, in the Alternative, Motion for a New Trial. ECF No. 141. For the reasons below, the Court **DENIES** Defendant's Motion.

## DISCUSSION

Under Federal Rule of Civil Procedure 59(e), a court may alter or amend a judgment "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Irani v. Palmetto Health*, 767 Fed. App'x 399, 423 (4th Cir. 2019) (citation omitted). Mere disagreement with a court's decision does not support a Rule 59(e) motion. *Hutchinson v. Staton*, 994 F.2d 1076, 1082 (4th Cir. 1993) (citation omitted).

Here, Defendant makes three arguments "to correct a clear error of law or prevent manifest injustice." *Irani*, 767 Fed. App'x at 423. First, Defendant argues the Court had inadequate evidence and legal justification to conclude Defendant violated the applicable standard of care. ECF No. 142, at 11–17. Second, Defendant argues the Court had inadequate evidence to conclude the alleged negligence proximately caused the alleged injury. *Id.* at 17–18. Third, Defendant argues the Court awarded excessive damages and should reduce them. *Id.* at 19. The Court will address these arguments in turn.

**I.     The evidence supports the Court's finding that Defendant violated the standard of care.**

Defendant argues Defendant was not negligent because the inadvertent suturing of the bladder during a hysterectomy is a known risk that can occur at the hands of any surgeon. ECF No. 142, at 11–12. The medical pamphlet given to Plaintiff, Plaintiff's expert Dr. Robert Dein, and Defendant's expert Dr. Steven McCarus all acknowledged this risk of injury. ECF No. 132-28; ECF No. 145, at 42; ECF No. 136, at 192. However, the fact that a particular injury is a known risk of a procedure does not preclude a finding of negligence. For example, in *Klepack v. United States*, the court found a physician breached the standard of care by burning a patient's bowel even though the physician had communicated the risk of burning to the patient. 5:13-CV-124, 2015 WL 12791400, at *2, *7 (N.D.W. Va. Nov. 19, 2015). Plaintiff's knowledge of a possible risk to her bladder is therefore irrelevant to determining whether Defendant was negligent.

Defendant also contends that two cases, *Varga v. United States* and *Franklin v. United States*, confirm that "the inadvertent placement of a suture in the bladder during a hysterectomy is not negligence as a matter of law." ECF No. 144, at 2; 314 F. Supp. 671 (E.D. Va. 1969), *aff'd*, 422 F.2d 1333 (4th Cir. 1970); 12-1167 KBM, 2014 WL 12628533 (D.N.M. 2014). Both *Varga* and *Franklin* did hold that the suturing of the bladder during a hysterectomy was not negligent.

314 F. Supp. at 675; 2014 WL 12628533, at *5. However, Defendant's argument that these cases compel a finding of no negligence here overstates their significance. The Court reads *Varga* and *Franklin* to hold only that suturing a bladder during a hysterectomy can occur without negligence. Neither case precludes the possibility of a negligent suturing of the bladder. In other words, suturing the bladder during a hysterectomy is not necessarily, but can be, the result of negligence.

*Varga* and *Franklin* are also of limited help because they contain little discussion of expert testimony specific to the hysterectomies at issue. Instead, the opinions rely more on the general proposition that suturing the bladder is a known and inevitable risk. *See* 314 F. Supp. at 675; 2014 WL 12628533, at *5. Without more specific analysis of expert testimony, the Court cannot use these cases for guidance on how to measure a physician's performance against the standard of care to distinguish between negligent and nonnegligent bladder injuries. Any reliance on *Varga* for determining negligence is further suspect given the opinion's age, for the expert testimony that persuaded the court is now approaching fifty years old.

One factor relevant to the standard of care—a patient's anatomy and related medical history—further distinguishes this case from *Varga* and *Franklin*. In *Varga,* a physician diagnosed the plaintiff with a first degree uterine prolapse and a third degree cystourethrocele prior to surgery. 314 F. Supp. at 673. And, in *Franklin*, the plaintiff's physician found remodeling of the cervix and vagina and a mass in the cul-de-sac of the rectum that may have resulted from a retroverted uterus. 2014 WL 12628533, at *4. The physician also found the plaintiff's uterus was slightly enlarged and very firm and that there was no distinct cervix with an anterior and posterior lip. *Id.* Anatomic irregularities like these may heighten the risk of suturing a patient's bladder during a hysterectomy. ECF No. 145, at 23–25, 36–37. But here, Plaintiff exhibited normal anatomy. *Id.* at 23. She had

no distortion from scar tissue, endometriosis, prior radiation, abscesses, or any other anatomic distortion that would have made a bladder injury more acceptable under the standard of care. *Id.*

Defendant also argues the Court cannot rely on Dr. Dein's testimony because it lacks factual support. ECF No. 142, at 14–15. However, Dr. Dein based his opinion on the totality of the evidence in this case. ECF No. 145, at 22. He reviewed Plaintiff's medical records, including Dr. McCarus's report and Dr. Charles Woolums's operative report from repairing Plaintiff's fistula. *Id.* at 20, 29. He read the depositions of Dr. Andrea Kellar, Dr. Jessica Granger, Dr. Woolums, and Plaintiff. *Id.* at 20. And he evaluated this evidence based on his extensive medical education, training, and experience performing hundreds of vaginal hysterectomies and evaluating adverse treatment outcomes as chair of a risk management committee. *Id.* at 20–21, 11, 7–8. Dr. Dein testified that this combination of education, training, experience, and review of the relevant materials allowed him to testify on Dr. Kellar's alleged negligence to reasonable medical probability. *Id.* at 21–22.

The Court concluded Dr. Dein testified to reasonable medical probability, and, after reviewing the record, the Court agreed with his conclusions. Plaintiff had no anatomic distortions that would make injury to the bladder more reasonable. *Id.* at 23. As the attending physician, Dr. Kellar was responsible for the placement of all sutures, including those placed by Dr. Granger. *Id.* at 25. Dr. Kellar was also responsible for knowing the location of Plaintiff's bladder. *Id.* at 23, 18. However, Dr. Kellar lacked situational awareness during the operation. *Id.* at 25. She did not know the location of the bladder, and she overlooked the placement of a suture in the bladder. *Id*. at 25–26. Dr. Kellar should have been able to see that the suture was close to the bladder. *Id*. If Dr. Kellar was unable to see whether a suture was close to the bladder, she should have manipulated the field to check. *Id.* at 26. Dr. Kellar should have suspected she was close to the bladder, and the standard

of care is to use a cystoscopy if a physician suspects being close to the bladder. *Id.* at 50, 25. However, Dr. Kellar did not suspect an injury because she lacked proper anatomic orientation, so she did not discover the misplaced suture. *Id.* at 50. Therefore, she violated the standard of care.

**II. The evidence supports the Court's finding that Defendant's negligence proximately caused Plaintiff's injury.**

Plaintiff needed to prove that Dr. Kellar's negligent suturing of Plaintiff's bladder proximately caused Plaintiff's subsequent injuries. W. Va. Code § 55-7B-3(a)(2) (2003). Proof of proximate causation must ordinarily be by expert testimony. *Hicks v. Chevy*, 358 S.E.2d 202, 205 (W.Va. 1987) (citation omitted). A physician testifying to the causal relationship between a physical condition and a defendant's negligence only needs to testify to a reasonable probability. Syl. Pt. 5, *Dellinger v. Pediatrix Med. Grp., P.C.*, 750 S.E.2d 668 (W.Va. 2013) (citation omitted).

Plaintiff met her burden. As discussed in Section I, the Court found Dr. Dein testified to reasonable medical probability based on his education, training, experience, and review of the relevant materials. ECF No. 145, at 21–22. Dr. Dein testified, and the Court agrees, that the errant placement of a suture in the bladder created a vesicovaginal fistula between the bladder and vagina. *Id.* at 27–28, 51. This fistula led to Plaintiff's subsequent complications. *Id.* at 27–28.

Defendant argues Dr. Dein's testimony is unreliable because the foundation of Dr. Dein's opinions is Dr. Woolums's operative report and Dr. Woolums later "retreated" from a key comment in that report. ECF No. 144, at 8–12. However, Dr. Dein based his opinions on "the totality of the evidence," not just Dr. Woolums's operative report. ECF No. 145, at 22. Dr. Woolums also did not retreat from his earlier comment. In his report, Dr. Woolums noted, "[Plaintiff's] bladder shows abnormal mucosa on the posterior wall *consistent with* a stitch/hole in her bladder." ECF No. 132-12, at 8 (emphasis added). He suggests the possibility, not the certainty, that a stitch caused the injury. Dr. Woolums similarly testified in his deposition that he could state

with reasonable certainty that something occurred during the hysterectomy to cause the fistula, but he did not know the exact mechanism. ECF No. 146-3, at 64–65. Dr. Woolums's recognition that a stitch may have caused the fistula supports Dr. Dein's conclusion, and Dr. Woolum's refrain from concluding the same does not undermine Dr. Dein's ability to make that conclusion based on his own expertise.

**III.     The damages awarded are not excessive.**

The Court awarded Plaintiff $355,359.43 in damages. ECF No. 137, at 1. This includes $11,461.82 for medical expenses, $1,893.00 for lost wages, and $342,004.61 for noneconomic damages (the maximum amount under the applicable damages cap). *Id.* Defendant argues the noneconomic damages awarded are excessive and remittitur is necessary.

Defendant first contends that the roughly 30 to 1 ratio of noneconomic to economic damages is excessive under the law, but Defendant cites no law supporting a ratio-based determination of excessiveness. To the contrary, "[c]ompensation for pain and suffering is an indefinite and unliquidated item of damages, and there is no rule or measure upon which it can be based." *Big Lots Stores, Inc. v. Arbogast*, 723 S.E.2d 846, 850–51 (W.Va. 2012) (citation omitted). Defendant also lists facts minimizing Plaintiff's condition and emphasizing her culpability for it, but the Court already considered these facts, and a Rule 59(e) motion is inappropriate for mere disagreements with the Court's conclusion. ECF No. 142, at 19; *Hutchinson*, 994 F.2d at 1082. The Court concluded $342,004.61 in noneconomic damages is appropriate because Plaintiff suffered a significant medical condition that caused pain, discomfort, embarrassment, and mental anguish. ECF No. 133, at 8. This award is not a "clear error of law" or "manifest injustice," nor is it "monstrous and enormous" under the appellate standard of review. *Irani*, 767 Fed. App'x at 423; *Addair v. Majestic Petroleum Co., Inc.*, 232 S.E.2d 821, 825 (W.Va. 1977).

**CONCLUSION**

The Court therefore **DENIES** Defendant's Motion to Vacate, Alter and/or Amend the Judgment Entered in this Civil Action and Enter Judgment in Favor of the United States, or, in the Alternative, Motion for a New Trial, ECF No. 141.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER: October 29, 2019

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE